HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSA SOCCER ACADEMY, LLC,

    Plaintiff,

v.

COLLEGE LIFE ITALIA, SOCCER MANAGEMENT INSTITUTE, STEFANO RADIO, and GIORGIO ANTONGIROLAMI,

    Defendants.

CASE NO. C19-0209-RAJ

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

This matter comes before the Court on the Defendants' Motion to Dismiss ("Motion"). Dkt. # 13. Plaintiff OSA Soccer Academy, LLC ("OSA") opposes the Motion. Dkt. # 16. For the reasons set forth below, the Court **GRANTS** the Motion.

## II. BACKGROUND

This is a dispute over an unsuccessful joint business venture. Dkt. # 1, ¶ 19. OSA, a Washington corporation with its principal place of business in Seattle, runs a soccer academy that focuses on international study-abroad education programs between the United States and Italy. *Id.*, ¶ ¶ 3, 19. According to OSA, the parties were planning to

jointly create and run a soccer study-abroad project called the Soccer Business School. *Id*., ¶ 19.  OSA claims, however, that Defendants engaged in tortious conduct, including the misappropriation of OSA's trade secrets and other proprietary information, and launched the Soccer Management Institute ("SMI"), an Italian entity with soccer study-abroad programs that compete directly with the Soccer Business School. *Id*., ¶ 40.

The complaint alleges that Giuseppe Pezzano, OSA's owner, met with Defendants Giorgio Antongirolami and Stefano Radio in 2016, to create a study-abroad program that would give U.S. college credits to students who would travel to Italy and play soccer. *Id*., ¶ 19.  Radio is the CEO and co-founder of College Life Italia, LLC ("College Life"). *Id*., ¶¶ 21, 23.  After Antongirolami introduced Pezzano and Radio, the parties are alleged to have met and discussed several projects. *Id*., ¶ 21-26.

In addition to the Soccer Business School venture, Pezzano and Radio are alleged to have collaborated on fielding a National Premier Soccer League (NPSL) team based in Pierce County, Washington. *Id.*, ¶ 27.  The team, Pierce County FC, planned to support the formation of the Soccer Business School by fielding a team with Italian players that associated with College Life. *Id*., ¶ 29.  Pezzano named Radio the Sporting Director for Pierce County FC and brought Radio to New Orleans for the NPSL owner's general meeting. *Id*., ¶ 28. Dkt. # 14 ¶ 23.  Through this role, OSA claims that Radio had direct contact and access to a database for Soccer Business School clients.  Dkt. # 1 ¶ 28.

Pezzano and Radio also attended various events together throughout the United States. In January 2017, Pezzano and Radio attended a meeting in Los Angeles, where Radio was introduced to Pezzano's soccer contacts. *Id*., ¶ 24.  Later that year, in May 2017, Pezzano and Radio attended a study-abroad fair in Los Angeles, where the same occurred. *Id*., ¶ 25. Dkt. # 14, ¶ 21.  In or around November 2017, Pezzano and Radio had a telephone conversation about the Soccer Business School venture, specifically the partnership agreement and division of proceeds between OSA and College Life.  Dkt. # 1, ¶ 26.  A few months later, Pezzano distributed information describing the program to the NPSL and the

Women's Premier Soccer League; he also registered the domain name, soccerbusinessschool.com and hired employees for the Soccer Business School. *Id.*, ¶ 32-34. Radio states he traveled to Washington on one occasion, around June 2017, to meet with Pezzano about the Pierce County FC soccer team. Dkt. # 14, ¶ 11.

Discussions between OSA and College Life about the Soccer Business School continued into 2018. In or around April 2018, Pezzano arranged to finalize a formal agreement about the venture between OSA and College Life. Dkt. # 1, ¶ 38. OSA claims, however, that its COO Cristiana Pedullà did not follow directions given to her to finalize the agreement. *Id.*, ¶ 39. OSA claims, instead, that Pedullà secretly began to work for SMI during this time and provided SMI with OSA's proprietary information and trade secrets. *Id.*, ¶ ¶ 34, 35. OSA alleges that Defendants formally broke off all contact with Pezzano by May 2018 and launched SMI. *Id.*, ¶ 41.

As part of the launch, SMI promoted a virtually-identical website that allegedly copied code from the Soccer Business School website and references the same addresses used for the Soccer Business School. *Id.*, ¶ ¶ 44, 45. OSA also alleges that the other social media pages belonging to the Soccer Business School were changed to promote and advertise the SMI study-abroad program without Pezzano's knowledge or approval. *Id.*, ¶ 47.

On February 14, 2019, Plaintiffs filed suit. Dkt. # 1. On April 4, 2019, Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), which is currently before the Court. Dkt. # 13.

### III. DISCUSSION

**A. Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss claims against it for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Plaintiff has the burden of establishing personal jurisdiction. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). "Where, as here, the defendants' motion is based on

written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id*. The plaintiff cannot "simply rest" on the bare allegations of his or her complaint, and all "uncontroverted allegations" must be taken as true. *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015). Where there are conflicts between parties over statements contained in affidavits, these conflicts must be resolved in the plaintiff's favor. *Id*.

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 771 (1989). The due process clause grants the court jurisdiction over defendants who have "certain minimum contacts . . . such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be found on either of two theories: general jurisdiction and specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction. *Id*. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations omitted). Because Plaintiff does not assert that Defendants are subject to general jurisdiction, the Court will only consider whether each defendant is subject to specific jurisdiction.

Courts apply a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum, (2) the plaintiff's claims arise out of the

defendants' forum-related activities, and (3) exercise of jurisdiction is reasonable. *Axiom Foods, Inc.*, 874 F.3d at 1068.

Plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In tort cases like this one, the plaintiff must show that the defendant has purposefully directed activities toward the forum. *Id.* at 802. In the purposeful direction inquiry, a court evaluates whether a defendant undertakes action that occurs outside the forum but is nonetheless directed toward the forum, such as distribution and advertising. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155-56 (9th Cir. 2006). In doing so, the Court applies the *Calder* "effects" test, which requires that a defendant (1) commit an intentional act, (2) expressly aimed at the forum state, (3) that caused harm that the defendant knew was likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783, 789-790 (1984)).

If the purposeful direction test is met, the Court must then evaluate whether the claims at issue arose from a defendant's forum-related conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). That is, OSA must show that it would not have suffered an injury "but for" each defendant's forum-related conduct. *Id.* The burden would then shift to the defendant under prong three to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* A plaintiff must establish specific jurisdiction over each individual Defendant.

**B. Specific Jurisdiction Analysis**

  i. <u>College Life Italia</u>

College Life is a Missouri corporation with an office in Kansas City. Dkt. # 1, ¶ 4. College Life is not a Washington entity, does not own or lease property in Washington, does not employ anyone in Washington, and has no contracts or other business in Washington other than the venture with OSA. *Id.*, ¶ 4-5. Dkt. # 14, ¶ 13. Stefano Radio, acting as an agent of College Life, communicated telephonically with OSA about the

Soccer Business School. Dkt. # 14, ¶ 11. Radio also states that he visited Washington on one occasion, and that he met with Pezzano in California and Louisiana to develop the joint venture. *Id.*, ¶¶ 11, 20-21, 23.

The Court finds that College Life's contacts with Washington are insufficient to establish purposeful direction. The "minimum contacts analysis looks to the [entity's] contacts with the forum State itself, not with the [entity's] contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). As such, telephone conversations and emails that College Life had with Pezzano are insufficient to establish jurisdiction. *In re Boon Global Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019); *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985).

Other alleged contacts also fail the minimum contacts analysis. For instance, even assuming Radio's lone trip to Washington occurred on behalf of College Life, that too is insufficient to establish purposeful direction. *Nelson Motivation, Inc. v. Walton Motivation, Inc.*, No. CV-16-1843-RSWL-MRWx, 2016 WL 4086767, at *4 (C.D. Cal. July 29, 2016). It is true that "[a] single forum state contact can support jurisdiction," but that is only appropriate where "the cause of action… arise[s] out of that particular purposeful contact of the defendant with the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). That is not the case here. No tortious conduct is alleged to have occurred during this one-off trip, which appears to have been part of a broader effort to develop the soccer team in Pierce County. *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (one fundraising trip alleged to be related to infringing conduct insufficient to confer jurisdiction); *Alexandria Real Estate Equities, Inc. v. Runlabs (UK) Limited*, No. 18-CV-07517-LHK, 2019 WL 4221590, at *9 (N.D. Cal. Sept. 5, 2019) (same). Indeed, the complaint details events related to the joint venture taking place in Los Angeles and New Orleans, which undercuts any argument that Radio's lone trip created a "substantial connection" to Washington. Even more, College

Life's misuse of business contacts, which is the subject of this litigation, is alleged to have occurred almost exclusively in Italy. Dkt. # 1, ¶ 60.

OSA also points to purported advertising by College Life to the NPSL and the Women's Professional Soccer League as evidence of purposeful direction. *See* Dkt. # 1, ¶ 32. The Court disagrees. The pleadings and declarations only demonstrate that College Life sent a single brochure to one individual about the Soccer Business School program. Dkt. # 17, Ex. F at 27-29. OSA otherwise, fails to identify the number of individuals or entities that received purported advertisements and where those individuals or entities are located. *Axiom Foods, Inc.*, 874 F.3d at 1070 (citing *Walden*, 571 U.S. at 1123) (any California contacts created by sending a single newsletter to 55 recipients of unknown residence were too "attenuated" to confer specific jurisdiction). As currently plead, the purported advertisements fail to substantially connect College Life to Washington residents. *Axiom Foods, Inc.*, 874 F.3d at 1071.

For these reasons, Plaintiff did not meet its burden to establish that this Court has personal jurisdiction over College Life.

        ii.    <u>SMI</u>

OSA also fails to establish jurisdiction as to SMI. OSA alleges that SMI, an Italian entity, made misleading statements "on the internet and elsewhere," which could mislead students into registering to study at SMI instead of the Soccer Business School. Dkt. # 1, ¶ 50. However, merely alleging misleading statements "on the Internet and elsewhere" is insufficient to establish purposefully directed activity at Washington. The Court notes that SMI's website is passive, does not expressly target Washington, and lists addresses in Missouri and Florence. *Id*., ¶ 45. Dkt. # 14, Ex. A at 2-4. *Cybersell Inc., v. Cybersell Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (holding no purposeful availment because the defendant did nothing to encourage people in the forum to access its website nor was any part of its business was done in the forum).

1 | Further, OSA does not provide any information to show how the effects of SMI's alleged tortious conduct would be felt in Washington. Dkt. # 1, ¶ 54. The Ninth Circuit has said that to establish purposeful direction, all three prongs of the *Calder* "effects" test must be met. *Schwarzenegger*, 374 F.3d at 803. In *Calder*, the Court held that jurisdiction over petitioners in California was proper because the allegedly libelous story concerned the California activities of a California resident, impugned the professionalism of a California television entertainer, and California was the focal point of both the story and of the harm suffered. 465 U.S. at 788-89. Such facts are needed to satisfy the "effects" test. Having failed to show that SMI was targeting Washington or Washington residents, or had Washington-based clients, OSA fails to show purposeful direction. *Alexandria Real Estate Equities, Inc.*, 2019 WL 4221590, at *9.

   iii. Stefano Radio

As previously mentioned, Stefano Radio is alleged to have communicated telephonically with OSA about the Soccer Business School and visited Washington on one occasion. Dkt. # 1, ¶ ¶ 23, 26. Dkt. # 14, ¶ 11. The Court finds that these contacts with Washington are insufficient to establish purposeful direction. First, as stated before, the minimum contacts analysis looks to the defendant's contacts with the forum State itself and not contacts with persons who reside there. *Walden*, 571 U.S. at 285. Therefore, Radio's calls alone do not establish minimum contacts.

Similarly, Radio's lone trip to Washington does not rise to the level of minimum contacts to subject him to jurisdiction because it is unclear whether he was visiting in his personal capacity or on behalf of College Life, or even whether he was visiting in regard to the Piece County venture or for the Soccer Business School joint venture. Dkt. # 14, ¶ 11. Dkt. # 17, ¶ 22. *See In re Boon Global Ltd.*, 923 F.3d at 652 ("[A] corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum."); *Farhang v. Indian Inst. of Tech.*, No. C-08-02658 RMW, 2011 WL 2669616, at *4 (N.D. Cal. July 7, 2011) (holding that "a brief

business meeting with [plaintiff] during travel to California for other purposes" was insufficient to establish personal jurisdiction).

But even assuming Radio visited Washington in his personal capacity, a single trip to Washington does not establish sufficient contacts, absent allegations of tortious conduct. Again, a plaintiff must point to contacts which demonstrate that the defendant "expressly aimed" its tortious conduct at the forum. *Picot*, 780 F.3d at 1214. No tortious conduct is alleged to have occurred during this trip, which appears to have been part of a broader effort to develop the soccer team in Pierce County. *See id.* at 1213; *Alexandria Real Estate Equities, Inc.*, 2019 WL 4221590, at *9. As currently plead, Radio's trip to Washington does not detail tortious conduct expressly aimed at Washington. Accordingly, OSA fails to show that this Court has personal jurisdiction over Radio.

    iv. <u>Giorgio Antongirolami</u>

There are very few allegations in the Complaint about Antongirolami and even less about his Washington contacts. Antongirolami is not a citizen of Washington, does not reside in Washington, and never traveled to Washington. Dkt. # 1, ¶ 9. Dkt. # 15, ¶ 3. OSA principally alleges that Antongirolami contacted Pezzano in Washington regarding the OSA study-abroad project in Italy. The Court disagrees with OSA that Antongirolami's contacts with Pezzano qualify as purposeful direction. This contact appears to have been via telephone rather than in person, which alone is insufficient to show purposeful direction. *Peterson*, 771 F.2d at 1262 (ordinarily, use of mail, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state). With no other Washington contacts alleged, OSA did not meet its burden to establish that this Court has personal jurisdiction over Antongirolami.

//

//

## IV. CONCLUSION

For the foregoing reasons, OSA did not meet its burden to establish that the Court has personal jurisdiction over any Defendant and the Court **GRANTS** the Motion and dismisses without prejudice. Dkt. # 13. The Court will not address the 12(b)(6) arguments made in the Motion.

Dated this 15th day of November, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge